15264

LILLIE B. THOMAS v. THE AMERICAN WORKMEN

(14 S. E. (2d), 886)

*Mr. T. A. Houser* and *Messrs. Brown & Watts,* for defendant-appellant,

*Mr. W. R. Symmes* and *Mr. L. Marion Gressette,* for respondent.

May 26, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The plaintiff sought damages against the defendant for its alleged fraud and deceit, and the action resulted in her favor for $100.00 actual damages, and $400.00 punitive damages.

The defendant issued to the plaintiff an insurance policy on April 27, 1938, which designated her husband, James Thomas, as beneficiary. Plaintiff alleges and the proof tends to show that at the time she applied for the insurance policy, the agent of the defendant, who solicited it, represented to her that its sick benefit provision would cover sickness of any character which she might suffer, and that such sick benefits, amounting to $12.00 per week, would become operative and payable from the first day of illness, whereas the

policy when delivered provided for the payment of $6.00 per week for sick benefits, and excepted certain disabling illnesses, and excluded the first week's sickness from the benefit provision.

After keeping the policy and paying the premium thereon for a period of six months, plaintiff became seriously ill from a disability which was excepted in the policy, and the refusal of the company to pay the benefits for the two weeks of her illness gave rise to this action. The claim was denied upon the ground that the illness from which the plaintiff suffered was excluded by the provisions of the policy.

The plaintiff and her husband are illiterate Negroes, unable to read or write, and, as shown by the record, are utterly without experience in business transactions. After being advised by the company following her illness that her policy provided that no sick benefit would be paid for the first week's sickness, and that the weekly benefit amounted to only $6.00, she had the policy read to her by two friends residing in the community. The evidence tends to show that the policy in the particulars to which we have referred was misrepresented to the plaintiff by the authorized agent of the defendant whom she and her husband had known for many years, and that she would not have purchased the policy if she had not believed that it contained the provisions represented to her.

The defendant assigns error because the trial Judge overruled its motion for a directed verdict which was made upon the ground that the plaintiff is barred from recovery, even though the representations were fraudulently made, by reason of her own negligence and gross contributory disregard of her duty, in that she failed to avail herself of the opportunity and means at hand to protect her interest and safeguard her rights. It is argued that the plaintiff knew that she was bound by the terms of the contract, knew that she should ascertain its terms, and that she had access at all times to persons who could and would inform her of its

contents, and therefore she should not be heard to complain of the alleged fraud practiced upon her.

In the case before us, we have an ignorant Negro woman, with an equally ignorant husband and with no circumstances to incite suspicion, dealing with a representative of the defendant who was well informed, and who according to the undisputed evidence, fraudulently misrepresented the provisions of the policy in material particulars. Under numerous decisions, we must give to the evidence for the plaintiff, and all reasonable inferences arising therefrom, the strongest probative force which it will bear. It is inferable from this testimony that the alleged misrepresentations were made deliberately and intentionally. The plaintiff testified that the agent assigned as a reason for the apparently high premium provided in the policy, that it contained the favorable provisions with reference to sick benefits falsely represented by him. The evidence likewise shows that the defendant's agent professed to have read the policy to the plaintiff, and that he gave her further assurance that it carried the sick benefit provisions which she believed it contained. The agent was not in attendance upon the trial, and the testimony of the plaintiff and her husband was not contradicted.

The right to rely upon representation is inseparably connected with the correlative problem of the duty of a representee to use diligence in ascertaining the truth with respect to the representations made to him. With regard to the need and degree of such diligence in cases involving fraud, the authorities are not in complete accord. Some Courts have held that the doctrine of negligence does not authorize deception in what is said or unsaid, and hence the effect of negligence on the part of the party deceived may be tolled by the active fraud of the other party. In other words, the rule sanctioned by some Courts is that where one party to a transaction induces the other party to enter into it by willful misrepresentations, he cannot escape liability for his

fraud by showing such party could have investigated the representations made, and would have found that they were untrue. 23 Am. Jur., 963. We have not gone to this extent.

The policy of the Courts is, on the one hand, to suppress fraud, and on the other, not to encourage negligence and inattention to one's own interest. Either course has obvious dangers. But the unmistakable drift is toward the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary.

Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes a reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the form and materialty of the representations, the respective intelligence, experience, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties. *Souba v. Life Insurance Company of Virginia*, 187 S. C., 311, 197 S. E., 826; *Hood v. Life & Casualty Insurance Company of Tennessee*, 173 S. C., 139, 175 S. E., 76; *Crosby v. Metropolitan Life Insurance Company*, 167 S. C., 255, 166 S. E., 266; *J. B. Colt Company v. Britt*, 129 S. C., 226, 123 S. E., 845; *Baldwin v. Postal Telegraph Cable Company*, 78 S. C., 419, 59 S. E., 67.

It is undoubtedly true that the principle of the right of reliance is closely bound up with a duty on the part of the representee to use some measure of protection and precaution to safeguard his interest. We approve the rule which was given by the trial Court in its instructions to the jury in this case, and that is in respect to the right to rely upon representations, every person must use reasonable diligence for his own protection. So that the

solution of the question will depend upon the factual situation of each case.

After reviewing the evidence and applying the legal principles above adverted to, we are satisfied that the issues of negligence and recklessness were properly submitted to the jury. On these issues this case is controlled by *Crosby v. Metropolitan Life Insurance Company, supra.* A motion for a new trial based upon similar grounds was properly overruled.

The defendant contends that the lower Court erred in its instructions to the jury with reference to the measure of actual damages. The Court denied a requested charge that the return of the premiums paid, with interest thereon, would be the true measure of actual damages. Instead of charging this, the jury was told that if they found for the plaintiff, she would be entitled to the actual loss which she sustained. In other words, "what would the policy have been worth to the plaintiff if it had been as it was represented to be?" The jury returned a verdict of $100.00, actual damages. Upon a motion for a new trial by the defenant, the Court granted a new trial *nisi* unless the plaintiff should remit the sum of $76.00 from the amount of actual damages, thus reducing the verdict for actual damages to the sum of $24.00. This latter figure covered two weeks illness at $12-.00 per week, which was the amount plaintiff alleged she had contracted for; and the undisputed evidence showed that she had been ill and disabled for that length of time.

As a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained, and place him in the same position that he would have occupied had he not been defrauded. 24 Am. Jur., Section 217, Page 47. The recovery is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually

or presumptively within the contemplation of the parties when the fraud was committed. 24 Am. Jur., Section 218, Page 48; 27 C. J., Section 228, Page 83. The evidence in this case shows, as heretofore stated, that the plaintiff was confined to her bed from a serious illness for a period of two weeks, which was certified to by her attending physician. .If she had obtained the policy she contracted for she would have been paid $24.00, covering the period of two weeks. And this is the amount of actual loss she has sustained. Such damages under the evidence were the natural and proximate consequences of the fraud. In our opinion, the trial Judge took the correct view of the law, and committed no error.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and STUKES concur.