## 15377

### SPEED v. AMERICAN WORKMEN

(18 S. E. (2d), 732)

May, 1941.

The Order of Judge Lide ordered to be reported follows:

This is an action for fraudulent breach of an insurance contract or policy. The complaint alleges that the plaintiff is a colored woman residing in Georgetown, uneducated and unable to read or write, and that the defendant is a corporation engaged in the insurance business, and was at the times mentioned doing business in Georgetown "through its local agent, James Rogers"; and that some time before November 9, 1938, this agent sold to her a policy of insurance on the life of her son, Herman Cooper, under which she was the beneficiary, and that subsequently thereto and prior to May 24, 1939, the same agent sold to her a policy of insurance on the life of her daughter, Butha Gadson, under which she was also the beneficiary; and that the agent guaranteed this to be the same kind of policy as that issued on her son, Herman Cooper; that thereafter Butha Gadson died while the policy was in full force and effect, all premiums having been paid; and that the plaintiff "delivered to the agent of the defendant company, the said policy of insurance for collection

from said defendant company"; and that thereafter the defendant company wrote her that they were ready to pay the sum of $26.10, that being "the amount that the policy called for"; whereupon she demanded the return of the policy, but that the company sent her a different policy of insurance, although exactly like the one she had held, except that the color of the border was purple instead of green and that it also contained provisions under which 10% only of the policy was payable since the insured Butha Gadson died within six months; and thus was unlike the Herman Cooper policy. Hence the plaintiff alleges in effect that the action of the defendant amounted to a fraudulent breach of the contract, and she seeks actual and punitive damages in the sum of $2,500-.00. The gist of the controversy is that if the policy was like the Cooper policy, as plaintiff alleges, she is entitled to $296-.00, and she alleges that the policy the company returned to her was not the one she delivered to the agent after the death of her daughter.

The answer of the defendant company admits the issuance and delivery of a policy on the life of Butha Gadson, and also the issuance and delivery of a policy on the life of Herman Cooper, but it alleges that the policy issued on the life of Butha Gadson provided that in the event of death of the insured within six months ten per cent. of the amount only would be payable to the beneficiary, and that under another provision of the policy this would be reduced by half if death was due to heart disease or certain other diseases; and it should be stated here that it is admitted that the deceased did die of heart disease, and this latter provision is the same as that in the Cooper policy. The answer further alleges that tender was made of the amount due on the policy and this tender was refused. And there is a specific denial of all charges of fraud, and a plea of contributory negligence or gross negligence is also interposed. The defendant alleges in effect that the policy which it returned after the death of Butha Gadson is the identical policy originally issued on her life.

The allegation of the complaint to the effect that the plaintiff after the death of Butha Gadson delivered the policy to the agent of the defendant company for collection was admitted in the answer, on information and belief.

The cause came on to be tried before the undersigned as presiding Judge and a jury at the May, 1941, term of the Court of Common Pleas for Georgetown County, to wit, May 20, 1941. Motions for nonsuit and direction of verdict made by counsel for defendant were overruled, and the cause submitted to the jury which returned a verdict in favor of the plaintiff for $296.00 actual and $800.00 punitive damages. Whereupon the defendant made a motion for a new trial, which was noted on the minutes of the Court, and by express agreement of counsel was marked heard; and was argued before me at my chambers at Marion, on July 9, 1941, and after full argument of counsel for the respective parties was taken under advisement.

There are four grounds of the motion for a new trial, the first of which is as follows: "Error in admitting in evidence letter purportedly written by Jas. Rogers dated February 2, 1941 (1940) addressed to plaintiff at Georgetown, S. C., the error being that the letter was introduced for the purpose of establishing, in the form of admission against interest, the terms of the contract and as evidence that the policy returned to plaintiff by defendant was not the original policy but a substitute and there is no evidence to establish that Jas. Rogers was the agent of defendant at the time the letter was written nor was there evidence that the letter was written in the scope of his employment, discharge of his duties or that he had authority to write the letter for the defendant or make such admissions which were binding upon the defendant."

When the letter referred to was originally offered in evidence in behalf of the plaintiff, the only objection made by counsel for the defendant was that it had not been properly proven, but the Court held that the plaintiff testifying that it was received through the mail it would be admissible; and

counsel for the defendant then stated: "Our ground is that the signature has not been proven and is not connected as authentic with any one from the company." The Court again ruled that it was admissible because received through the mails. It should be stated in this connection, however, that later in the trial of the case there was plenary proof of the genuineness of the signature of the agent James Rogers to the letter.

The letter is as follows:

"Georgetown, S. C.
"February 2, 194...

"Dear Mrs. Speed:

"Inclose find your letter. I never could remember to bring it to you so I thought I would mail it that you may get it. I am sorry that thing turn up like it did but I did not read the policy; the Company said it was full benefit so I sole it as a full benefit; take it page by page and see if you can understand. Listen, Miss Speed, I cannot collect no insurance at present so please mam send your son payment to the co., it won't cost you any than this; take your receipt and $1.10 and put it in the white envelope and seal it and put it in the mail and it will be O. K. I will see you some time soon.

"Yours,
"Jas. Rogers,
"P. O. Box 343, Georgetown,
S. C."

The date of the letter was doubtless intended to be February 2, 1940.

Since, as above stated, the objection made to the letter was to its authenticity, it is unnecessary to consider the grounds upon which the admissibility of the letter is now questioned, but even if this be waived, I am persuaded that the admission of the letter was entirely proper under the circumstances.

Paragraph 6 of the complaint is as follows: "That the plaintiff, Hannah Speed, delivered to the agent of the defendant company, the said policy of insurance

for collection from said defendant company." And it is admitted that after the insured, Butha Gadson, died plaintiff delivered the policy to James Rogers, the agent who had sold it to her and who had collected the premiums thereon, and that she delivered it for collection. The answer of the defendant specifically admits, on information and belief, the allegations of Paragraph 6 of the complaint. It is therefore a fact admitted by the pleadings that James Rogers was not only the agent who sold the policy and collected the premiums, but that he was likewise the agent with reference to the collection of the amount due the beneficiary on the policy. And the plaintiff testified that she sent her son to see the agent twice, presumably with reference to the payment of the policy, but that he failed to come to see her, "instead of he coming he wrote a letter." The letter referred to was the one introduced in evidence. Surely it cannot be said that under these circumstances the letter was inadmissible on the theory that the declarations of the agent were in reference to a matter not within the scope of his agency. On the contrary, they related to a matter which I think was admittedly within the scope thereof. If, as the pleadings show, he was the agent for the collection of the policy the plaintiff had the right to assume that he would report to her, which he did in and by the letter in question.

The Court of course does not question the long line of cases excluding admissions of agents where at the time they were made no agency existed, or they were beyond the scope thereof; such as the leading case of *Mars v. Virginia Home Ins. Co.*, 17 S. C., 514, and many others, including the recent case of *Cohen v. Standard Accident Ins. Co.*, 194 S. C., 533, 9 S. E. (2d), 222. But they do not appear to be applicable here.

I am therefore of opinion that even if the defendant could now be allowed to enlarge its grounds for the exclusion of the letter the same was admissible, and that the first ground of the motion for a new trial should be, and is hereby, overruled.

The second ground, which is similar in purport, is as follows: "Error in the allowance of the introduction of testimony by counsel and the witness J. A. Doyle of statements made by Jas. Rogers, the error being that there is no testimony to establish that Jas. Rogers was the agent of defendant at the time the statements were made or that he had authority to make such statements so as to bind the defendant, that there was no evidence that he was acting in the discharge of his duties or scope of his employment in making the statements so as to bind the defendant."

This ground relates to the circumstance that J. B. Morrison, Esq., one of the attorneys for the plaintiff, sent for the agent James Rogers to come to his office where he had a conversation with him in the presence of the witness J. A. Doyle with reference to the letter above mentioned, but so far as the testimony of Mr. Doyle is concerned, it is merely to the effect that Rogers acknowledged his signature to the letter. Certainly this was not inadmissible on any ground.

Mr. Morrison himself testified as to what Rogers said with reference to the letter, although counsel for the defendant objected, stating: "I don't believe they have proved agency at the time the statement was made." The objection being overruled, Mr. Morrison testified in regard to his conversation with Rogers as follows: "I asked Rogers if he had written that letter and he admitted that he had and I asked him—I read the clause in there about the full benefit and I asked him what he meant by that and he told me at first that he meant that the policy would give only what it called for; that is, under its terms, that was what he meant by the full benefit. I questioned him some further and he admitted that he had sold her the policy that was exactly as the one he sold to her on her son, called a Class M, Full Benefit Policy."

For reasons already stated, I think the testimony was properly admitted. And it may also be observed that Rogers endeavored to give a construction of his letter favorable to the defendant company. I am of opinion

that the second ground of the motion for a new trial should also be, and it is hereby, overruled.

The third ground of the motion is as follows: "Error in refusing to grant defendant's request for a directed verdict, the error being that the only reasonable inference to be drawn from the testimony is that defendant had performed its obligations under the contract of insurance with plaintiff; that there was not a scintilla of competent and relevant testimony capable of the inference that defendant had breached its contract of insurance with plaintiff and that the breach thereof was accompanied by a fraudulent act."

Of course the position of the defendant in this respect was carefully considered by me, both on the motion for a nonsuit and on the motion for a directed verdict. But the testimony of the plaintiff clearly and fully sustains her complaint in every material particular. While illiterate, she appeared to be an intelligent colored woman, and she definitely testifies that the agent represented to her that the policy she bought on her son, Herman Cooper, and the one she bought on her daughter, Butha Gadson, were the same; and she says, further, that while she was unable to read she saw the two policies and they looked to her to be just alike. This testimony is significant in view of the fact that the policy issued to Herman Cooper and the one claimed by the company to have been issued to Butha Gadson have the same general appearance, except that the border on the Cooper policy is green, while the border on the policy alleged by the company to have been issued to Butha Gadson is dark blue, almost purple. The plaintiff, however, testified that the two policies as they were actually issued had the same border. She says: "I knew it was the same kind by that border." Plaintiff further testifies that after the death of her daughter she delivered the policy to the agent Rogers who came for it, and that the policy had never been returned to her, but that a check came in for $26.10, which was unsatisfactory to her, and that thereafter she consulted Mr. Morrison as her attorney who demanded the return of the policy, but that the policy which

was sent him by the company was not the same and did not have the same border. There was evidence offered by the defendant company to the effect that the policy returned by them was the original policy issued on the life of Butha Gadson, and that they had offered to pay the full amount due thereon. But certainly if the testimony of the plaintiff was believed by the jury their verdict for actual damages was not only justified but required, as well as a verdict for punitive damages in some amount. In the charge to the jury the Court endeavored to submit squarely the issue as to what policy was actually written on the life of Butha Gadson, stating that if it was the policy returned by the company and introduced in evidence then the company was liable only for $29.60, whereas, if the policy as actually issued contained the same terms as those in the Herman Cooper policy the correct amount due on the policy was $296.00.

Counsel for the defendant company argues earnestly that the plaintiff's testimony should not be given credence, because she was certainly mistaken as to the amount of her son's policy, which was considerably more than was stated by her; and furthermore, in substance, that she was bound to know the two policies were different because while her son's policy was more the premium on the two was the same. But in this connection, the plaintiff testified that the agent told her at the time that the only difference between the policies was that her son was younger than her daughter. However, these matters were for the consideration of the jury, and when the testimony of the plaintiff is considered as a whole the conclusion that the jury was reasonably justified in finding in her favor seems scarcely debatable.

Furthermore, it should be observed from a consideration of all the evidence in the record that James Rogers, admittedly the agent of the defendant company, did not testify in the cause, and the application for the insurance on the life of Butha Gadson was not introduced in evidence.

It is clear that this ground of the motion for a new trial should be, and is hereby, overruled.

The fourth and last ground is as follows: "That the verdict as to punitive damages is excessive and controlled by prejudice and caprice."

As I have already indicated, if the jury accepted the testimony of the plaintiff as true, she was not only entitled to a verdict for actual damages, but also entitled, at least, to some punitive damages. And I do not think it can be said that the verdict rendered for punitive damages was so excessive as to indicate prejudice or caprice. However, after mature reflection, it is my judgment that the verdict for punitive damages was too high, and that a reduction by half would tend to promote substantial justice.

It is therefore, ordered, that the motion for a new trial be, and the same is hereby, granted, unless the plaintiff or her attorneys of record shall within ten (10) days from the filing of this order remit in writing upon the record herein the sum of Four Hundred ($400.00) Dollars of the verdict rendered in favor of plaintiff for punitive damages, so that the verdict shall then stand as actual damages, Two Hundred and Ninety-Six ($296.00) Dollars, and punitive damages, Four Hundred ($400.00) Dollars; upon which judgment may then be entered. And if such remission is not so made the cause shall stand upon Calendar I of this Court for a new trial.

*Mr. H. L. Smith*, of Georgetown, and *Messrs. Brown & Watts*, of Barnwell, for appellant,

*Mr. J. B. Morrison* and *Mr. M. W. Pyatt*, both of Georgetown, for respondent,

February 17, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

This appeal involves only matters which were considered and decided by Judge Lide in an order disposing of appellant's motion for a new trial. Appellant has argued before us two questions, the first relating to the admission in evidence of the letter of defendant's agent and the testimony concerning his statements about it, and the other challenging the propriety of the submission of the case to the jury as to actual and punitive damages.

The order on Circuit was for a new trial *nisi,* unless the verdict for punitive damages be reduced by one-half to $400.00, which was done by plaintiff. The order disposes of the issues to the entire satisfaction of this Court; it is affirmed and adopted as our judgment, and will be reported.

The recent decision in *Thomas v. American Workmen,* 197 S. C., 178, 14 S. E. (2d), 886, 136 A. L. R., 1, involved the same defendant and is similar in some respects.

All exceptions are overruled and the judgment below affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.