1957

Julia S. DeHART, Respondent v. DODGE CITY OF SPARTANBURG, INC., Appellant.

(427 S.E. (2d) 720)

Court of Appeals

*Judson K. Chapin, III* of *Gaines, Walsh & Chapin,* Spartanburg, *for appellant.*

*Albert V. Smith* of *Albert V. Smith, P.A.,* Spartanburg, *for respondent.*

Heard Jan. 25, 1993.

Decided Feb. 22, 1993.

GARDNER, Judge:

First Federal Savings & Loan Association of South Carolina (First Federal) instituted this action against Julia S. DeHart (DeHart) seeking judgment for a deficiency on a consumer loan note resulting from the repossession and resale of an automobile. DeHart's answer alleged, *inter alia,* a general denial. She later amended her answer to join Dodge City of Spartanburg, Inc. (Dodge City) as a third-party defendant and to include a counterclaim and third-party complaint alleging, *inter alia,* a cause of action against Dodge City for fraud and deceit. Summary judgment was entered against DeHart on behalf of First Federal as to liability on the note. DeHart's fraud and deceit was tried before a jury, which returned a verdict in favor of DeHart. We reverse.

## ISSUE

The dispositive issue of this appeal is whether the trial judge erred in failing to grant Dodge City's motion for directed verdict and post-verdict motion for judgment n.o.v. based upon DeHart's failure to establish that DeHart had a right to rely on the alleged misrepresentation.

## FACTS

This case began as a collection action by First Federal against DeHart for the recovery of a deficiency owed by her

on an automobile consumer loan note. DeHart denied liability on the note on the grounds, *inter alia*, that she had been fraudulently induced into signing the note and entering into the underlying automobile purchase contract as a co-buyer with Minnie Cunningham.

The facts pertinent to DeHart's fraud and deceit action are viewed by this court in a light most favorable to DeHart. The facts of this case arose when Minnie Pearl Cunningham (Minnie Pearl) decided to purchase an automobile from Dodge City, whose place of business was in Spartanburg. Minnie Pearl was told that her credit was bad. Minnie Pearl prevailed upon Minnie Smith to ask her old friend DeHart to accompany her to Dodge City in Spartanburg. DeHart did.

DeHart contends that she went to Dodge City's place of business on two occasions. On the first occasion, the automobile salesman they were talking to had to leave in the midst of the conversation. On the second occasion, DeHart agreed to sign papers which she testified the salesman represented to her were "character witness" papers. Her exact testimony was:

> Q. And these documents were presented to you as what now?
> A. As a character witness. There was no information on them.
> Q. Did you think that Mr. Loftis or whoever presented these papers to you knew what they were?
> A. Yes.
> Q. Did you—were you told at any time differently about anybody that these papers were other than character witness papers or records?
> A. No.
> Q. Did you read the papers, Mrs. DeHart?
> A. No, I did not.
> Q. Did you take Mr. Loftis or whoever presented those paper to you—did you take his word that those were character papers?
> A. Yes, I did.
> Q. Okay and did you feel that Mr. Loftis knew what those papers?
> A. Yes, sir.

Q. Did you later find out that these papers may not have been character witness papers?

A. After I got that statement saying that I owe on the car.

The promissory note she signed is of record. DeHart later testified that she told the salesman of Dodge City that she would only agree that the papers be signed if Minnie Pearl gave her security. She and Minnie Pearl were to return to Dodge City the next day. She never recontacted Dodge City. Dodge City sold the automobile to Minnie Pearl and assigned the note to First Federal, who originally instituted this action on the note that Minnie Pearl signed. Incidentally, summary judgment was awarded against Minnie Pearl on the note and she does not appeal this order.

## DISCUSSION

We hold that the trial judge erred in failing to direct a verdict on Dodge City's motion for a directed verdict and post-verdict motions made upon the grounds that DeHart had no right to rely upon the alleged misrepresentations. She is an educated person and is charged, under South Carolina authority, with the responsibility of reading the instrument she signed.

In an appeal of an action at law tried by a jury, the jurisdiction of this Court extends merely to a correction of errors of law. Factual findings of the jury will not be disturbed unless there is no evidence which reasonably supports the jury's findings. *Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

To prevail in a fraud action, a party must present clear, cogent and convincing evidence of the nine familiar elements of fraud,[1] including evidence that a misrepresentation was made and that the party had a right to rely on the

---

[1] The following elements must be shown to prove fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer' ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. Failure to prove any of these elements is fatal. *King v. Oxford*, 282 S.C. 307, 318 S.E. (2d) 125 (Ct. App. 1984).

misrepresentation. Failure to prove any element of fraud is fatal to the action.

DeHart, as noted, testified that she did not read the papers she signed and that she relied on the salesman's representation. There is evidence of record that she clearly had the ability to read and understand the import of the contract. The record shows DeHart is a college graduate with a degree in elementary education. She taught school for five years and has also worked as an operation room scrub nurse. The record contains testimony that DeHart has entered into other credit transactions, specifically involving the purchase of an automobile.

There is also evidence of record that DeHart had the opportunity to inform herself of the true nature of the papers she signed. For example, one of the papers signed by DeHart was conspicuously labeled "CONSUMER LOAN NOTE & DISCLOSURE." DeHart signed directly below an acknowledgment which reads, "I have read and acknowledge receipt of a copy of this Note." On at least two of the documents she signed on the line above the notation, "(buyer's signature)."

"It is the policy of the courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests." *King v. Oxford*, 282 S.C. 307, 312, 318 S.E. (2d) 125, 128 (Ct. App. 1984). Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests. Moreover, there is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship, and there is an arm's-length transaction between mature, educated people. This is especially true in circumstance where one should have utilized precaution and protection to safeguard his interests. *Florentine Corp., Inc. v. PEDA I, INC.*, 287 S.C. 382, 339 S.E. (2d) 112 (1985); *Parks v. Morris Homes Corp.*, 245 S.C. 461, 141 S.E. (2d) 129 (1965) (a party has a duty to exercise reasonable care to protect himself or herself against fraud by reading a contract before he signs it); *Outlaw v. Calhoun Life Ins. Co.*, 236 S.C. 272, 113 S.E. (2d) 817 (1960) (one cannot complain of fraud in misrepresentation of contents of written instrument signed by her when the truth could have been ascertained by reading the instrument).

Under the well-established law of this State, we hold that DeHart had the opportunity to read the documents she

signed, and that in not doing so failed to exercise reasonable diligence in protecting her own interest. Accordingly, we hold, as a matter of law, that she did not have the right to rely on statements by the Dodge City salesman, and that the judge erred in not granting Dodge City's motions for a directed verdict or judgment notwithstanding the verdict.

We find no merit to DeHart's contention that after signing the note, she attached the condition that Minnie Pearl would give her security for her co-signing the note. By her own testimony, Minnie Pearl and DeHart were to return to Dodge City's place of business the next day. DeHart testified that she never heard from Minnie Pearl and did not return to Dodge City. She made no effort to disavow her signature or agreement until this suit was instituted. We hold there is no merit to this contention.

## CONCLUSION

For the foregoing reasons, we reverse. Based on our holding, we find it is unnecessary to address the remaining issues.

Reversed.

SHAW AND BELL, JJ., concur.